UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

ABDULFOTIKH SULEYMANOV,                     :
                                            :
                              Plaintiff,    :
                                            :    **ORDER GRANTING**
            -against-                       :    **DEFENDANT**
                                            :    **UMAROV'S MOTION**
WINSTON PREMIER LOGISTICS, LLC,             :    **TO DISMISS AND**
                                            :    **PLAINTIFF'S MOTION**
            *and*                           :    **FOR DEFAULT**
                                            :    **JUDGMENT AS TO**
OTABEK UMAROV,                              :    **DEFENDANT WINSTON**
                                            :    **PREMIER LOGISTICS,**
                              Defendants.   :    **LLC**
                                            :
                                            x        21-CV-810 (VDO)
-------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

This suit is between an individual, Abdulfotikh Suleymanov, and the company he previously drove a semi-truck for, Winston Premier Logistics, LLC, and that company's principal, Otabek Umarov. Pending before the Court is Suleymanov's third motion for default judgment as to Winston Premier Logistics, as well as Umarov's motion to dismiss for lack of both personal and subject-matter jurisdiction. The Court now grants Umarov's motion to dismiss and grants in part Suleymanov's motion for default judgment.

## I.    **BACKGROUND**

The following facts are drawn from Suleymanov's complaint.[1] Suleymanov alleges that he was hired by Umarov to drive a semi-truck and trailer owned by Winston Premier Logistics,

---

[1] Compl., ECF No. 1.

LLC ("Winston Premier") in January of 2021.[2] Suleymanov was to be paid seventy cents for each mile driven.[3] In May of 2024, Winston Premier stopped paying Suleymanov for his work.[4] About a month later, Umarov requested a meeting with Suleymanov under the pretext that he would provide Suleymanov with the backpay he was owed.[5] Instead, Umarov discharged Suleymanov without payment.[6]

Meanwhile, Suleymanov and Umarov also engaged in personal dealings. Specifically, Suleymanov gave Umarov two iPhones and two sets of Airpods, and Umarov agreed to deliver those items Suleymanov's in-laws in Uzbekistan.[7] Suleymanov conveyed the iPhones and Airpods to Umarov, but Umarov has neither delivered them to Uzbekistan nor returned them to Suleymanov.[8]

Shortly thereafter, Suleymanov filed this lawsuit.[9] He names both Umarov and Winston Premier as defendants.[10] He brings six claims for relief: (1) a declaratory judgment that Connecticut courts have jurisdiction over both Defendants, (2) breach of contract against both defendants, (3) violations of the Connecticut Unfair Trade Practices Act (CUTPA) against both defendants; (4) violations of the Fair Labor Standards Act (FLSA) for failure to pay

---

[2] *Id.* at 6 ¶ 1.

[3] *Id.* at 6 ¶ 1.

[4] *Id.* at 6 ¶ 9.

[5] *Id.* at 6 ¶ 11.

[6] *Id.* at 6 ¶¶ 12–13.

[7] *Id.* at 7 ¶¶ 17–18.

[8] *Id.* at 7 ¶¶ 18–19.

[9] *Id.* at 1.

[10] *Id.* at 2 ¶ B.

minimum wage against Winston Premier, (5) violations of federal criminal laws prohibiting wire fraud against both defendants, and (6) conversion against Umarov.[11] He seeks damages, a declaratory judgment, and an order directing Umarov to return the iPhones and Airpods.[12]

After filing, the case experienced a protracted delay as the United States Marshals sought to serve both Umarov and Winston Premier. Thereafter, Suleymanov twice filed motions for default judgment, and the Court (Meyer, *J.*) denied both motions.[13] The Court explained that Suleymanov needed both (1) to ensure that default *status* was first entered against each Defendant that he sought default *judgment* against and (2) to substantiate his claimed damages with corroborating evidence.[14]

After Suleymanov sought and received default entry as to both Umarov and Winston Premier,[15] Umarov entered an appearance and filed an answer to Suleymanov's complaint.[16] The Court initially vacated the entry of default as to Umarov after his appearance,[17] and Umarov filed a motion to dismiss the case for lack of both personal and subject-matter jurisdiction.[18] After Umarov repeatedly failed to appear for status conferences, however, the Court stated its intention to "enter a default against defendant Umarov for his apparent willful failure to appear," but only after it was satisfied that it had jurisdiction over Suleymanov's

---

[11] *Id.* at 6-7 ¶¶ 1–20.

[12] *Id.* at 4 ¶ IV.

[13] Ord. Denying Without Prejudice Mots. for Default Judgment, ECF No. 38.

[14] *Id.*

[15] ECF Nos. 33, 41.

[16] ECF Nos. 44, 45.

[17] Ord., ECF No. 47.

[18] Mot. to Dismiss for Lack of Jurisdiction, ECF No. 72.

claims against Umarov.[19] In addition, Suleymanov has now filed for default judgment against Winston Premier for a third time.[20]

## II.    **DISCUSSION**

### A.    **Jurisdiction over Suleymanov's claims against Umarov**

Umarov has moved to dismiss Suleymanov's claims against him for lack of both personal and subject-matter jurisdiction. "It is firmly established that a court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought." *de Ganay v. de Ganay*, No. 11-CV-6490 (NRB), 2012 WL 6097693, at *4 (S.D.N.Y. Dec. 6, 2012).[21]

#### 1.    **Personal jurisdiction**

"Personal jurisdiction, unlike subject-matter jurisdiction, can [] be purposely waived or inadvertently forfeited," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011), because it "represents first of all an individual right [that] can, like other such rights, be waived," *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982). Put otherwise, a defendant can waive its right to object to personal jurisdiction because "a defendant can choose to subject itself to powers from which it may otherwise be protected." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 147 (2023) (Jackson, J., concurring).

The Federal Rules of Civil Procedure provide that a defendant waives any defense based on lack of personal jurisdiction by failing to raise the issue either in an answer or in an

---

[19] Mem. of Conf. and Ord., ECF No. 75.

[20] Mot. for Default Judgment as to Winston Premier Logistics, ECF No. 78.

[21] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decision, and adopts alterations contained therein.

initial motion. Fed. R. Civ. P. 12(h)(1); *Bauxites*, 456 U.S. at 704 (explaining that "defense of lack of jurisdiction over the person . . . is waived if not timely raised in the answer or a responsive pleading").

Here, Umarov failed to raise the defense of personal jurisdiction in *both* his answer and a contemporaneously filed motion to vacate default.[22] He has therefore consented to the Court's jurisdiction and, the Court denies his motion to dismiss for lack of personal jurisdiction.

### 2.    Subject-matter jurisdiction over Suleymanov's claims against Umarov

Establishing personal jurisdiction does not resolve whether this Court may conclude that Umarov is in default. *See Delisle v. Cruz Auto Sales, LLC*, No. 11-CV-1902 (MRK), 2012 WL 2061622, at *1 (D. Conn. June 6, 2012). Federal courts are courts of limited subject-matter jurisdiction. *See generally Gunn v. Minton*, 568 U.S. 251, 256 (2013). The Federal Rules of Civil Procedure require federal courts to dismiss any case *sua sponte* if "the court determines at any time that it lacks subject-matter jurisdiction" over that action. Fed. R. Civ. P. 12(h)(3). When considering a default judgment, "'all the well-pleaded allegations in the pleadings' are deemed admitted . . . , [but] 'this principle has no bearing on an inquiry into whether the default judgment itself would be void for lack of subject-matter jurisdiction.'" *Delisle*, 2012

---

[22] *See* Mot. to Vacate Default, ECF No. 43; Answer, ECF No. 44. Umarov did raise one jurisdictional defense in his answer, claiming that his dispute with Suleymanov is "less than the jurisdictional amount of this Court" (an invocation of the amount in controversy requirement of federal diversity jurisdiction). But diversity jurisdiction is a form of subject-matter jurisdiction, not personal jurisdiction, which is a separate defense. *See* Fed. R. Civ. P. 12(b)(1) & 12(b)(2). And raising one specific jurisdictional argument is insufficient to preserve all possible jurisdictional defenses.

WL 2061622, at *1 (quoting *Transatlantic Marin Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997)).

Suleymanov's complaint invokes the two most common forms of federal subject-matter jurisdiction: diversity jurisdiction and federal question jurisdiction.[23] In general, federal courts have so-called "federal question" jurisdiction over any claims that arise under federal law. *See* 28 U.S.C. § 1331. The first count of the Complaint seeks relief against Umarov in the form of a declaratory judgment, which the Court construes as invoking the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* But because the Declaratory Judgment Act expressly conditions its application on the existence of an actual controversy that is already within a federal court's jurisdiction, a complaint's invocation of the Declaratory Judgment Act is not on its own enough to support federal question jurisdiction. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006).

Suleymanov brings only one other claim under a federal law against Umarov: He seeks relief pursuant to 18 U.S.C. § 1343 *et seq*, a federal criminal law prohibiting wire fraud. But "[t]he law in this circuit is clear that this criminal statute does not support any private right of action." *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 422 (2d Cir. 2005) (summary order) (citing *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989)). Accordingly, Suleymanov's invocation of Section 1343 cannot support federal question jurisdiction. The remainder of Suleymanov's claims against Umarov are Connecticut state law

---

[23] Compl. at 3 ¶ II.A (citing 29 U.S.C. § 206 and 18 U.S.C. § 1343).

claims, which cannot supply federal question jurisdiction.[24] Accordingly, the Court lacks federal question jurisdiction over Suleymanov's claims against Umarov.

Federal diversity jurisdiction does not require the invocation of federal law, but it does require both (1) complete diversity of citizenship between the parties and (2) an amount in controversy in the litigation of at least $75,000. 28 U.S.C. §§ 1332(a) & 1332(a)(1)-(4). The amount in controversy is measured at the time that a complaint is filed, *Hall v. EarthLink Network, Inc.,* 396 F.3d 500, 506 (2d Cir. 2005), and is established by examining the dollar amount claimed therein, *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961).

In his claims against Umarov, Suleymanov seeks far less than $75,000 in damages: His claim for conversion explicitly requests damages totaling $10,650,[25] and his claim for breach of contract resulting from unpaid wages and expenses seeks only one month of pay and a small number of unspecified miscellaneous expenses, such as an Uber ride. The Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). Here, however, the Complaint contains little to support its assertion that the amount in controversy requirement is met. Courts in this Circuit do not credit conclusory assertions that the amount in controversy is satisfied and dismiss

---

[24] Suleymanov argues that the Court has federal question jurisdiction over Umarov pursuant to the FLSA. But Suleymanov's complaint expressly limits his FLSA claim only as "against the company." Compl. at 7 (Count IV). Because Suleymanov's FLSA claim against Winston Premier cannot supply federal question jurisdiction over Suleymanov's claims against a different defendant, this argument fails. *See King Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (The "plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over *each* defendant." (emphasis added)).

[25] Compl. at 7 ¶ 20.

actions where that assertion is "unsupported by the record." *Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 192 (D. Conn. 2014).

In this case, Suleymanov's assertion that the amount in controversy requirement is satisfied is clearly unsupported by the record. In fact, Suleymanov never clearly establishes that he means to claim that the action has more than $75,000 in controversy: the Complaint checks a box for diversity jurisdiction, but under a section asking about the "amount in controversy," Suleymanov writes only that "the amount in controversy is $10,000 or more."[26] Suleymanov's claims against Umarov, taken at their best, include about a month's salary, some routine reimbursements, and conversion claims that Suleymanov identifies as having a value of roughly $10,000. Suleymanov produces no specific reason to believe that the salary and reimbursements would add up to nearly $65,000 in damages, and no direct claim to that effect. The underlying facts that Suleymanov does offer provide no basis to believe that an amount larger than $75,000 is at stake in this suit. For that reason, the Court does not have diversity jurisdiction over Suleymanov's claims against Umarov.

The Court has concluded that it has neither federal question nor diversity jurisdiction over Suleymanov's claims against Umarov. As a result, the Court dismisses all claims against Umarov for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

---

[26] Compl. at 3 ¶ II.A, 4 ¶ II.B.3.

### B.    Default judgment as to Winston Premier

The Court now turns to Winston Premier, the sole remaining defendant. Unlike Umarov, Winston Premier remains in default.[27] Accordingly, Suleymanov now seeks entrance of a default judgment against Winston Premier.

"Even when a party fails to respond to a complaint, a petitioner is not entitled to a default judgment as a matter of right." *Republic of Guatemala v. IC Power Asia Dev. Ltd.*, 619 F. Supp. 3d 421, 428 (S.D.N.Y. 2022). "Default judgments are generally disfavored and are reserved for rare occasions." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004). Nonetheless, when a court enters default against a party, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019).

### 1.    Jurisdiction

"[B]efore entering a default judgment, the district court must pursue its 'independent obligation to inquire into the existence of subject-matter jurisdiction,' and 'assure itself that it has personal jurisdiction over the defendant.'" *IC Power Asia*, 619 F. Supp. 3d at 428 (quoting *Mickalis*, 645 F.3d at 125-26, 133).

As explained, federal courts have subject-matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 U.S.C. § 1331 (providing for "federal question" jurisdiction). Plaintiff's first cause of action alleges a violation of the FLSA, a federal law. Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made

---

[27] Ord., ECF No. 33.

solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous. *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022). The Court thus concludes that it has subject-matter jurisdiction over Suleymanov's claims against Winston Premier pursuant to federal question jurisdiction.

In addition to federal question jurisdiction over Suleymanov's FLSA claim, the Court exercises supplemental jurisdiction over his state law claims against Winston Premier. Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original subject-matter jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). Here, Suleymanov's CUTPA and breach of contract claims arise from the same set of facts—the employment relationship and lost wages—as the FLSA claim. Therefore, the Court will exercise supplemental jurisdiction over Suleymanov's state law claims against Winston Premier.

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Earlier in this action, as part of determining whether it could enter default against Winston Premier, the Court has already carefully evaluated the manner in which the company was served process and concluded that it had personal jurisdiction over Winston Premier. *Suleymanov v. Winston Premier Logistics, LLC*, No. 21-CV-810 (JAM), 2023 WL 5767674, at *3 (D. Conn. Sept. 7, 2023). The Court sees no reason to revisit that conclusion based on the evidence in the record.

Because it has both subject-matter and personal jurisdiction over Winston Premier, the Court is satisfied that it may exercise judicial power over Suleymanov's claims against them.

### 2. Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Suleymanov claims that a substantial part of the events or omissions giving rise to the claims herein occurred in Connecticut: namely, his hiring, training, and at least some of his workplace responsibilities.[28] In defaulting, Winston Premier does not dispute that factual background, and on the basis of those facts, the Court concludes that venue is proper in this district.

### 3. Suleymanov's claims against Winston Premier

Though a defendant's default is deemed to concede the facts in the complaint, "a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137. That is to say, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order). It is the Court's task to evaluate the legal question of whether the facts, as set out in the complaint, are sufficient to support a legal wrong. Therefore, the Court will find Winston Premier liable and award damages if Suleymanov can prove that the allegations in his complaint amount to a legal wrong. *Mickalis*, 645 F.3d at 137; *see also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

---

[28] Compl. at 6 ¶¶ 1–5.

Suleymanov brings claims against Winston Premier seeking a declaratory judgment and for breach of contract and under CUTPA, the FLSA, and federal criminal law. The Court proceeds to evaluate Suleymanov's claims one-by-one to determine whether Suleymanov's allegations are sufficient to support a claim for relief.

### a.    Fair Labor Standards Act

Suleymanov contends that Winston Premier violated the minimum wage provision of the FLSA. That provision requires covered employers to pay employees a specified minimum wage if the employee "is engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206. To establish a claim under that minimum wage provision, a plaintiff must show that: "(1) the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; (3) the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 245 (E.D.N.Y. 2024); *see* 29 U.S.C. § 206(a)(1).

First, Suleymanov must establish that Winston Premier is an "employer" under the FLSA. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and defines the term "person" in that section to include partnerships and corporations, 29 U.S.C. § 203(a). The Court is satisfied that Suleymanov has sufficiently alleged that Winston Premier is an employer under those definitions: Winston Premier hired Suleymanov and directed his work, clear actions "in the interest of an employer in relation to an employee."

Second, Suleymanov must show that he was an "employee" covered by the Statute. The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C.

12

§ 203(e)(1). Suleymanov claims just such a relationship, describing a contract to perform certain tasks, a training program, and completing tasks at the direction of Winston Premier for compensation. The Court discerns no reason to doubt Suleymanov's allegations, and "it follows . . . that for purposes of this default, []he qualifies as an 'employee' under the FLSA." *Bi v. Xia*, No. 18-CV-23 (JAM), 2023 WL 4684828, at *6 (D. Conn. July 21, 2023).

Third, for Suleymanov's FLSA claim to advance, the Court must conclude that none of the exemptions to the FLSA apply. "The FLSA contains a litany of exemptions." *Jimenez*, 744 F. Supp. 3d at 246. These include "executive, administrative, or professional" employees, certain agricultural employees, babysitters and some other caretakers, "outside salesmen," some seasonal employees, some employees in fishing, and small local newspaper employees, among several others. *Id.* at 246–47; *see* 29 U.S.C. § 213. "An employee's exempt status depends less on his title, and more on the actual duties performed." *Jimenez*, 744 F. Supp. 3d at 247.

Suleymanov alleges that he was a truck driver for Winston Premier. The Court finds no reason to conclude that the work that Suleymanov performed for Winston Premier, as alleged, falls under any of the exemptions to the FLSA's minimum wage provisions enumerated in 29 U.S.C. § 213(a)(1).[29] The Court therefore concludes that the FLSA's exemptions do not cover Suleymanov.

---

[29] Suleymanov's references to work as a truck driver would raise questions regarding whether he falls under the Motor Carrier Act exemption to the FLSA if Suleymanov was bringing overtime claims. But the so-called "motor carrier exemption" applies only to the FLSA's overtime provisions, and not its minimum wage requirements. *See* 29 U.S.C. § 213(b)(1).

Fourth, Suleymanov must show damages. "For purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 375 (E.D.N.Y. 2022). Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. If Suleymanov can demonstrate damages, the FLSA allows him to recover back pay and, potentially, additional liquidated damages. 29 U.S.C. § 216(b).

Suleymanov must show that he was paid less than the minimum wage to establish a violation of 29 U.S.C. § 206. Suleymanov alleges that, for the relevant period, he was paid nothing, which is certainly less than the minimum wage. But the problem arises in calculating Suleymanov's damages: The FLSA provides that a plaintiff may recover "the amount of their unpaid minimum wages." 29 U.S.C. § 216(b). But the FLSA does not provide for damages in the amount of unpaid bargained-for wages. *Cf. Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201–02 (2d Cir. 2013) ("[T]he [federal] statutory language simply does not contemplate a claim for wages other than minimum [] wages.").

Suleymanov was paid on a per-mile basis, and his damages submissions are entries as to the length of trips: For example, "[o]n or about May 27, 2021, I drove 265 [] miles" from "Rosemont[,] IL" to "La Crosse, WI" and that, "to deliver that load I drove a total of 551 miles, which translates into $385." Pl's. Claim for Damages, ECF No. 78-1 at 3 ¶ 8. Presumably because Suleymanov's relevant metric was miles rather than minutes, these entries provide no information as to the length of time that Suleymanov spent working.

14

Suleymanov's submission therefore does not provide any basis for determining how many hours he worked during the period in which he was unpaid. Thus, the Court cannot calculate—let alone substantiate—damages under the FLSA to Suleymanov, so the Court denies his motion for default judgment on his FLSA claim.

### b.    Breach of contract claim

Suleymanov's remaining claim for damages contends that Winston Premier breached its contract with him. "[T]he elements of a breach of contract claim under Connecticut law are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Medina-Corchado v. Univ. of New Haven*, No. 21-CV-132 (JAM), 2022 WL 279871, at *4 (D. Conn. Jan. 31, 2022) (citing *CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017).

Suleymanov straightforwardly meets these requirements. He alleges that he was hired to drive a semi-truck and trailer in exchange for wages by Winston Premier, showing agreement; that he completed his assigned tasks by driving the semi-truck, representing performance; that Winston Premier failed to pay him the wages he was due, representing breach; and that he was deprived of wages he was due, demonstrating damages. He also alleges that, as part of his contract with Winston Premier, he was supposed to be reimbursed for certain costs he accrued on behalf of Winston Premier.[30]   After careful review of the record in this case, the Court concludes that Suleymanov has met each of the required elements for a breach of contract claim.

---

[30] Compl. at 6 ¶¶ 10–11.

All that remains is to determine if Suleymanov can establish the amount of damages he has suffered as a result of Winston Premier's breach. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages. . . . There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence . . . upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Put otherwise, unlike a plaintiff's allegations pertaining to liability, allegations concerning damages are not deemed admitted by the defendant merely as a result of their default.

Suleymanov claims two sorts of damages as a result of Winston Premier's breach: (1) past-due wages and (2) certain reimbursements. Suleymanov has filed a detailed evidentiary submission in support of the damages he claims. Specifically, his filing includes an itemized record of the trips he took during the period for which he was not paid and bills of lading corroborating most of those trips, receipts for repairs on the semi-truck, credit card statements, and other miscellaneous receipts.[31] After reviewing these filings, the Court concludes that they provide adequate evidentiary support for the damages that Suleymanov claims: that is, he has

---

[31] ECF Nos. 78-1–78-8. "While courts will often conduct an inquest hearing to determine the appropriate award, such a hearing is not required, and courts have awarded damages by relying solely on the papers provided by plaintiff[s]." *Int'l Ass'n of Heat & Frost Insulators v. Affiliated Env't Servs. NJ, Inc.*, No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017). Here, the Court finds that an inquest hearing is not necessary because "the appropriate award can be determined based on the papers proffered by" Suleymanov. *Id.*

demonstrated that he was entitled to $10,884 in wages that Winston Premier failed to pay him as well as $1,782.96 in reimbursements.[32]

Therefore, the Court grants Suleymanov's motion for default judgment as to his breach of contract claim on the basis of his complaint and additional submissions corroborating his damages totaling $12,366.96, and award Suleymanov damages in that amount.[33]

### c.    CUTPA

Suleymanov alleges that Winston Premier's conduct violated the Connecticut Unfair Trade Practices Act. That Act provides that "[n]o person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A CUTPA claim has four elements: "that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189 (2021).

Suleymanov alleges that he has a CUTPA claim as a result of the same failure to pay wages and reimbursements. But his CUTPA claim quickly runs into trouble: As explained, to state a claim under CUTPA, the plaintiff must allege that the defendant's actions were

---

[32] The Court has performed its own calculations based on the underlying documents that Suleymanov submitted. The result of those calculations essentially confirmed Suleymanov's submissions, and though the damages the Court awards vary *slightly* from those submissions, the final numbers are within a few dollars.

[33] Because Suleymanov's FLSA, breach of contract, and CUTPA claims allege exactly the same injury, the Court notes that Suleymanov likely could not recover compensatory damages more than once: To do so would run afoul of the general prohibition on double-recoveries of compensatory damages for the same injuries. *See Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 82 (D. Conn. 2019) (citing *Meyer v. Holley*, 537 U.S. 280 (2003)).

performed in trade or commerce. Conn. Gen Stat. § 42–110b. And CUTPA defines trade or commerce as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42–110a(4). "In Connecticut . . . claims arising from the employer-employee relationship fall outside the ambit of the phrase trade or commerce and, thus, cannot [on their own] constitute a cognizable CUTPA violation." *Matysiak v. Spectrum Servs. Co.*, No. 10-CV-01841 (CSH), 2014 WL 545412, at *4 (D. Conn. Feb. 10, 2014).

Suleymanov, therefore, cannot establish at least one of the required elements of any CUTPA claim. Accordingly, the Court denies Suleymanov's motion for default judgment as to his CUTPA claim.

### d.    Criminal wire fraud

The Court has already explained that the federal criminal law in question—the wire fraud statute—does not support a private right of action. The Court therefore concludes that it cannot enter default judgment as to Suleymanov's federal criminal claim.

### e.    Declaratory relief

Suleymanov's remaining claim seeks a declaratory judgment that Winston Premier is a "nonresident individual[] or foreign partnership[] within the meaning of Conn. Gen. Stat. Ann. § 52-59b(a)." Compl. at 6 ¶ 6. That provision of state law allows Connecticut courts—and federal courts within the state—to exercise personal jurisdiction over individuals or partnerships that meet the requirements of the law.

The Complaint is ambiguous as to specifically what declaratory judgment it seeks. The Court, mindful of its obligation to liberally construe the filings of *pro se* litigants, construes

this claim to seek a declaratory judgment that the Court has personal jurisdiction over Winston Premier for purposes of this suit. But the Court has already concluded as much. *See* 2023 WL 5767674 at *3. For that reason, the Court concludes that Suleymanov's motion for default judgment as to this claim is moot, and therefore denies it.

### C.    Umarov's filing regarding an offset

Lastly, Umarov has filed a "Notice of Filing and Request for Setoff" to the docket.[34] In it, he states that he and Winston Premier have received a judgment from a Florida state court against Suleymanov and attaches a copy of that judgment (the "Florida judgment").[35] He requests an offset against any judgment in Suleymanov's favor from this Court on behalf of both himself and Winston Premier.[36]

First, to the extent that Umarov seeks to offset a judgment against himself, that request is moot because the Court has concluded it lacks jurisdiction over Umarov. Second, as to Winston Premier, this Court has already explained to Umarov that "only a licensed attorney may appear" and file documents with the Court on behalf of a limited liability company, and that Umarov cannot represent Winston Premier in this action.[37] That remains unchanged. Therefore, to the extent that Umarov's notice seeks relief, it is denied as moot as to Umarov and dismissed as to Winston Premier.

---

[34] ECF No. 80.

[35] Final Judgment for Money Damages, ECF No. 80-1.

[36] Not. of Filing at 1.

[37] Ord. RE: Aff. From Def. Umarov, ECF No. 42 (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007)).

### 1.    Suleymanov's collateral attack on the Florida judgment

In response to Umarov's filing of this notice, Suleymanov has submitted two filings.[38] Both filings argue that the Florida court lacked personal jurisdiction over Suleymanov and request that the Court "conduct an evidentiary hearing" and conclude that the Florida judgment is "void, null, and [without] legal force."[39]

Suleymanov asserts a new injury (the existence of the Florida judgment) arising out of a new set of facts (the process by which the Florida judgment was obtained) and requests additional relief (a ruling that the Florida judgment is null and void). In other words, Suleymanov seeks to amend his complaint to include a claim for relief from the Florida judgment. But Umarov's unsuccessful invocation of the Florida judgment is no basis to allow Suleymanov to functionally—or literally—amend his complaint nearly four years into this lawsuit.[40] The Court therefore denies Suleymanov's request for relief from the Florida judgment.[41]

---

[38] *See* ECF Nos. 81, 82.

[39] ECF No. 81 at 1, ECF No. 82 at 1.

[40] Federal courts must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Allowing an amendment to the operative complaint nearly four years into the litigation where one defendant has defaulted and the other has been dismissed would not advance the interests of justice.

[41] Were Suleymanov to file a new suit bringing claims related to the Florida judgment, he would have to overcome the *Rooker-Feldman* doctrine. That doctrine provides that federal district courts lack subject-matter jurisdiction to review state court decisions: "within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). The *Rooker-Feldman* doctrine deprives a federal court of subject matter jurisdiction if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4)

III.    **CONCLUSION**

For the reasons set forth above, the Court **grants** Umarov's motion to dismiss for lack of jurisdiction (ECF No. 72) and dismisses Umarov from this action.

The Court **grants in part and denies in part** Suleymanov's third motion for default judgment (ECF No. 78). Specifically, the Court **grants** Suleymanov's motion as to his breach of contract claim (Count II) and **denies** his motion as to his claims under the FLSA, CUTPA, federal criminal law, and his claim seeking a declaratory judgment (Counts I, III, IV, and V).

The Clerk of Court is respectfully requested to enter final judgment to Suleymanov with damages totaling $12,666.96 against Winston Premier Logistics, LLC and to close the case.

**SO ORDERED.**

Hartford, Connecticut
March 3, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

---

the state judgment was rendered before the district court proceedings commenced." *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023). Accordingly, review of a state court judgment normally "lies [] with superior state courts." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).